POLLAK, District Judge,
dissenting in part:
I agree with the court that the District Court’s grant of summary judgment in favor of defendant-appellees Clinton County, Lycoming-Clinton County Mental Health and Mental Retardation Program (MHMR), MHMR director Debra Duffy, Clinton County Prison (CCP) Warden Duran, and CCP Deputy Warden Motter should be affirmed-—although, as explained below, I come to this conclusion for reasons somewhat different from those stated by the court. See infra note 2. I also agree that the District Court’s denial of plaintiff-appellant Jervis Goodrich’s motion to appoint counsel did not constitute an abuse of discretion. See infra note 1. However, I respectfully dissent from the court’s conclusion that the District Court’s grant of summary judgment in favor of defendant-appellee Laura Lee Dingier should be affirmed. I am of the view that Goodrich, through his pro se efforts, has proffered enough evidence to create a genuine issue of fact as to whether Dingier acted with deliberate indifference to his serious medical needs.
The court’s determination that the record reveals no evidence of deliberate indifference by Dingier rests on the court’s conclusion that “Dingler’s consultation with Goodrich’s physician and her clinical assessment of Goodrich clearly indicate an exercise of medical judgment, rather than deliberate indifference to his medical needs.” ante at 112.
I part ways with my colleagues because I do not perceive Goodrich’s suit to be predicated on a theory that Dingier carried out a “clinical assessment” and “an exercise of medical judgment” that she knew to be markedly inadequate to meet Goodrich’s serious needs. Rather, appellant’s theory of liability is that, during Goodrich’s several months as an inmate at CCP, Dingier—who was not a medical professional—effectively and deliberately denied him access to medical care.
In Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 763 (3d Cir.1979), this court observed that, when assessing a prisoner’s deliberate indifference claims, “considerable latitude [should be given] to prison medical authorities” lest courts come to “second-guess the propriety or adequacy of a particular course of treatment ... (which) remains a question of sound professional judgment.” The court went on to explain that “[ijmplicit in this deference to prison medical authorities is the assumption that ... an informed judgment has, in fact, been made.” Id. But when an informed judgment has not been made—where, for example, the prison official in question does not have medical training—concerns about second-guessing professional determinations are simply not at issue. Nothing in the record suggests *115 that Dingier had any medical training whatsoever—certainly no training of a sort qualifying her to diagnose and treat mental illness. Nor does Dingier so contend. Accordingly, Goodrich’s claim should not be evaluated under the deferential standard that this court reserves for review of determinations by prison medical authorities. Rather, we should consider his claim in light of this court’s observation that, when “prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment, the constitutional standard of Estelle [v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ] has been violated.” Id.
Goodrich has offered undisputed evidence that Dingier knew Goodrich had a diagnosed mental illness. App. 93. In addition, the record establishes that (1) federal Magistrate Judge William H. As-key, by order dated February 25, 2003, recommended that Goodrich “be evaluated by a mental health professional and provided with any treatment recommended by that professional;” and, (2) Dingier, in March of 2003, declined to comply with that recommendation based on her own non-expert assessment that “no referral to [a] psychiatrist was warranted.” See App. 179 (Dingier affidavit); see also id. at 103-04 (order of Magistrate Judge Askey); id. at 180 (notes from Dingler’s March 17, 2003 meeting with Goodrich, mentioning “referral by federal judge”).
Thus, it seems to me that Goodrich, by his own unaided efforts, has brought forward evidence on the basis of which a fact-finder could rationally conclude that, while Goodrich was an inmate at CCP, Dingier “den[ied him] access to a physician capable of evaluating the need for ... treatment” of his “serious medical needs.” Pierce, 612 F.2d at 763.[7] Accordingly, I would vacate the District Court’s grant of summary judgment in favor of Dingier and remand this matter for further proceedings.[8]

. I have noted that Goodrich proceeded pro se in developing the evidence which, in my judgment, is sufficient to defeat summary judgment in favor of Dingier. Had Goodrich been represented by counsel in the District Court, it may well be that counsel would have developed additional evidence. Nonetheless, I do not question the District Court’s denial of Goodrich's motion for the appointment of counsel at the time the District Court ruled. That ruling, as my colleagues explain, was grounded in factors that properly informed the District Court’s exercise of its discretionary authority. However, I take it for granted that, if my colleagues were to agree with my view that summary judgment should not have been granted in favor of Dingier, on remand for further proceedings the District Court would undertake to appoint counsel for Goodrich. See App. 18 (District Court order stating that Goodrich’s motion for appointment of counsel "will be denied” but that "[i]n the event ... that future proceedings demonstrate the need for counsel, the matter may be reconsidered either by the court, on its own initiative, or upon a motion properly filed by [Goodrich]”).

. My agreement with the District Court’s grant of summary judgment in favor of the other appellees is predicated on the fact that Goodrich has offered no evidence tending to establish that Dingler’s conduct was in any significant sense affected by an act or omission of any other appellee.